FREDERICKA HOMBERG WICKER, Judge.
1 ¡.The plaintiff/appellant, who had previously settled a workers’ compensation claim with his employer, filed suit to recover an unpaid medical bill and attorneys fees and penalties associated with bringing this action. The workers’ compensation judge found the employer liable for the bill but capped recovery to $750 in accordance with the Compromise Agreement but declined to award attorneys fees. Finding no manifest error, we affirm.
Facts and Procedural History
Plaintiff/appellant, Daniel Robinson, suffered a knee injury during the course and scope of his employment with Mackie Roofing on January 9, 2003. Sometime after the injury, Mr. Robinson had a heart attack and died.[1] His wife, Samantha Butler-Robinson, was substituted as plaintiff. The parties settled the case for a lump sum, and Mackie Roofing agreed to be responsible for all outstanding medical bills incurred up to the date of signing of the order of approval by the workers’ compensation judge. This agreement was manifested in the “Joint ^Petition for Approval of Workers’ Compensation Compromise Settlement in Accordance with La.R.S. 23:1272,” hereinafter referred to as “Compromise Settlement.” The Compromise Settlement was signed by Mrs. Butler-Robinson, her counsel, and defense counsel. The Compromise Settlement contained the stipulation that the settlement be “made pursuant to and in conformity with the provisions of the Louisiana Revised Statutes dealing with Workers’ Compensation and particularly La.R.S. 23:1272.”
The Order of Approval, signed by the workers’ compensation judge and Mrs. Butler-Robinson and her counsel, states that the employer and its insurers “shall be forever released and relieved from any and all past, present, or future liability of any nature or kind; whatsoever, for the claims of Daniel Robinson, and his counsel, for compensation, medical expenses, penalties and/or attorneys fees of whatever kind or nature, or which may hereafter arise.” Mrs. Butler-Robinson signed an affidavit stating that she had read the Compromise Agreement and attested to the correctness thereof. Her attorney signed a similar verification attesting that Mrs. Butler-Ro-bison concurred in the settlement.
After the documents were executed and the lump sum payment was rendered, two outstanding unpaid medical bills were discovered, only one of which is the subject of this dispute. The disputed bill was a chiropractic bill from Dr. Richard Hages for $2,041. Plaintiff moved for ruling on medical expenses on March 20, 2009, alleging that he did not receive notice that Dr. *143 Hages’ bill would not be paid until after the settlement, releases, and dismissals were executed. Defense counsel opposed the motions and argued that if Mackie Roofing was ordered to pay the disputed bill, it should be paid pursuant to the Louisiana Workers’ Compensation Act (LWCA) as stipulated in the Compromise 14Agreement. By doing so, the bill would be classified as nonemergency care[2] and capped at $750.
A hearing was held on the matter on November 2, 2009, wherein the workers’ compensation judge found Mackie Roofing to be liable for the bill. But in accordance with the Compromise Agreement, the workers’ compensation judge classified the chiropractic treatment as non-emergency care and capped recovery at $750 because neither Dr. Hages nor Mr. Robinson sought pre-approval before treatment began. Mrs. Butler-Robinson appealed.
First Assignment of Error
In her first assignment of error, Mrs. Butler-Robinson alleges that the workers’ compensation judge erred in failing to order Mackie Roofing to pay the full amount of Dr. Hages’ bill. Plaintiffs counsel alleges that the Compromise Agreement differed from the pleadings that were drafted during the negotiations and that he did not notice the changes until after everything was executed.[3] Specifically, plaintiffs counsel states that the settlement documents should not have included the clause that settlement be made “pursuant to and in conformity with Workers’ Compensation and particularly La. R.S. 23:1272.” He argues that the original settlement agreement did not contain such language; but, he failed to introduce any evidence in the record below of what the parties had previously agreed to. But, even if there had been such evidence in the record, we would not be able to consider it.
| S“A compromise instrument is the law between the parties and must be interpreted according to the parties’ true intent.” Taylor v. Hathorn Transfer & Storage, 07-933 p. 4 (La.App. 3 Cir. 2/6/08), 976 So.2d 259, 262 citing Brown v. Drillers, Inc., 93-109 p. 7 (La.1/14/94), 630 So.2d 741, 748. Interpretation of a contract is the determination of the common intent of the parties, and when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La.C.C. art. 2045-6. The Compromise Agreement, which was signed by all parties, states that the settlement is “made pursuant to and in conformity with the provisions of the Louisiana Revised Statutes dealing with Workers’ Compensation and particularly La.R.S. 23:1272.” In his brief, plaintiffs counsel admits that he failed to notice this change when he signed the agreement. He has now come before this Court to request that we undo the effect of the clear and explicit language that was set forth in the Compromise Agreement. Plaintiffs counsel ne *144 glected to notice the clause and cannot now rely on this Court to undo the consequences of the clause when he could have discovered this clause through the exercise of due diligence. Accordingly, this assignment is without merit.
Second of Assignment of Error
In her second assignment of error, plaintiff contends that the workers’ compensation judge erred in failing to award attorneys fees and costs for having to bring this action. The assessment of penalties and attorneys fees in workers’ compensation cases is “essentially a question of fact. Factual findings are subject to manifest error or clearly wrong standard of review.” Landry v. Furniture Center 05-643, p. 13 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 312-3 citing Authement v. Shappert Engineering, 02-1631 (La.2/25/03), 840 So.2d 1181, 1188-9.
RLa.R.S. 23:1201(E) states that “medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.” Section F further provides:
[fjailure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim.
The court must make a dual inquiry before it can award penalties and attorney fees. First, the employee must prove that the employer received written notification. Then, he must prove that payment was not made within sixty days after receipt.
Plaintiffs counsel points to Lambert v. Brookshire Grocery Company 06-1001 (La.App. 3 Cir. 12/20/06), 945 So.2d 918; however, in that case, there was evidence in the record that showed when written demand was made and that payment was either denied or not paid within 60 days of receipt. Our review of the record reveals no evidence of whether a demand was ever made regarding Dr. Hages’ bill. “The. claimant who seeks imposition of sanctions for failure to timely pay medical bills has the burden of establishing that the medical bills were not paid within sixty days of receipt.” Weingartner v. Louisiana Ice Gators, 05-1211, p. 2 (La.App. 3 Cir. 11/2/06), 942 So.2d 68. Plaintiff has not met that burden. Although plaintiffs counsel attaches a letter to its brief, dated July 7, 2006, addressed to defense counsel that references Dr. Hages’ outstanding bill of $2,041, this letter was not included in the record below and cannot be introduced for the first time on appeal. As defense counsel points out, this Court has no jurisdiction to receive new evidence on appeal. Taylor v. Boudreaux, 09-256, p. 9 (La.App. 5 Cir. 12/8/09), 25 So.3d 216, 221 citing Palermo v. Morrison Cafeteria, 94-659, p 1. (La.App. 5 Cir. 12/28/94), 648 So.2d 1071, 1072.
17ConcIusion
We agree with the trial judge that the treatment rendered by Dr. Hages is classified as non-emergency care and is therefore capped at $750 in accordance with La.R.S. 23:1142(B)(1). Likewise, we find no manifest error in the workers’ compensation judge’s failure to award penalties and attorney fees. Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. Mr. Robinson’s death was unrelated to his knee injury.

. La.R.S. 23:1142(B)(1) provides: Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemer-gency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

. Plaintiff’s counsel stated in his brief that the attorney with whom he originally negotiated left the firm and that the final Compromise Agreement did not reflect the agreement that he made with former counsel.